## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

CHARLES A. O.,             )
                           )
        Plaintiff,       )
                           )
v.                         )      Case No. 22-cv-00553-SH
                           )
MARTIN J. O'MALLEY,[1]   )
Commissioner of Social Security, )
                           )
        Defendant.     )

## OPINION AND ORDER

Pursuant to 42 U.S.C. § 405(g), Plaintiff Charles A. O. requests judicial review of the decision of the Commissioner of Social Security ("Commissioner") denying his claims for disability benefits under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. § 1381-1383f.  In accordance with 28 U.S.C. § 636(c), the parties have consented to proceed before a United States Magistrate Judge.  For the reasons explained below, the Court **AFFIRMS** the Commissioner's decision denying benefits.

### I.  Disability Determination and Standard of Review

Under the Act, an individual is disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  The impairment(s) must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage

---

[1] Effective December 20, 2023, pursuant to Fed. R. Civ. P. 25(d), Martin J. O'Malley, Commissioner of Social Security, is substituted as the defendant in this action.  No further action need be taken to continue this suit by reason of 42 U.S.C. § 405(g).

in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* § 1382c(a)(3)(B).

Social Security regulations implement a five-step sequential process to evaluate disability claims. 20 C.F.R. § 416.920. "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). Under the five-step process, the Commissioner inquires into: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a severe medically determinable impairment(s); (3) whether the impairment meets or equals a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the claimant can still do his past relevant work; and (5) considering the RFC and other factors, whether the claimant can perform other work. *Id.* § 416.920(a)(4)(i)-(v). Generally, the claimant bears the burden of proof for the first four steps. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At the fifth step, the burden shifts to the Commissioner to provide evidence that other work the claimant can do exists in significant numbers in the national economy. 20 C.F.R. § 416.960(c)(2).

Judicial review of the Commissioner's final decision is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The "threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is more than a scintilla but means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court will "meticulously examine the record as a whole, including anything that may

2

undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," *Grogan*, 399 F.3d at 1262, but it will neither reweigh the evidence nor substitute its judgment for that of the Commissioner, *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).  Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence.  *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.    Background and Procedural History

Plaintiff applied for Title XVI disability benefits on June 25, 2019.  (R. 416-26.) Plaintiff alleges he has been unable to work since September 25, 2018, due to seizures, hypertension, constant body spasms, family history of grand mal seizures, depression, anxiety, memory loss, neuropathy in both legs and feet, two herniated discs, and two bulging discs.  (R. 416, 458.)  Plaintiff was 46 years old at the time of the decision now on appeal.  (R. 35, 418.)  He has an 11th grade education and has no past relevant work.[2] (R. 59, 83, 459.)

Plaintiff's claim for benefits was denied initially and upon reconsideration. (R. 238-41, 245-49.)  Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), which was conducted on November 16, 2020.  (R. 68-102, 250.)  The ALJ issued a decision on December 31, 2020, finding Plaintiff not disabled.  (R. 216-28.)  The Appeals Council remanded for reconsideration and resolution of certain issues, including whether a hand-held assistive device (cane) was medically necessary.  (R. 233-37.)  On remand, a new ALJ conducted a supplemental administrative hearing and again found Plaintiff not disabled.   (R. 19-35, 42-67.)   The Appeals Council denied review on

---

[2] Plaintiff testified at the first administrative hearing and stated in his disability report that he completed the 11th grade.  (R. 83, 459.)  However, in other parts of the record, Plaintiff contends he only completed the 8th or 9th grade.  (R. 641.)

September 12, 2022 (R. 1-6), rendering the Commissioner's decision final, 20 C.F.R.
§ 416.1481.  Plaintiff appeals.

## III.   The ALJ's Decision

In his decision, the ALJ found at step one that Plaintiff had not engaged in
substantial gainful activity since the application date of June 25, 2019.  (R. 21.)  At step
two, the ALJ found Plaintiff had the severe impairments of seizure disorder, peripheral
neuropathy, degenerative disc disease, depressive disorder, and generalized anxiety
disorder.  (R. 22.)  At step three, the ALJ found Plaintiff's impairments did not meet or
equal a listed impairment.  (R. 23-25.)

The ALJ then determined Plaintiff had the RFC to perform "sedentary work as
defined in 20 C.F.R. 416.967(a)" with the following limitations:

> The claimant is able to lift or carry, push or pull ten pounds occasionally
> and less than ten pounds frequently.  The claimant can sit for six hours out
> of an eight-hour day, and stand or walk a combined total of two hours out
> of an eight-hour day.  The claimant cannot tolerate exposure to hazards
> such as unprotected heights or dangerous moving machinery.  Driving
> should not be a part of the claimant's job duties.  The claimant should avoid
> climbing ladders, ropes, and scaffolds.  The claimant can understand,
> remember and carry out simple instructions and detailed instructions.

(R. 25.)  The ALJ then provided a summary of the evidence that went into this finding.
(R. 26-33.)

At step four, the ALJ found Plaintiff had no past relevant work.  (R. 33.)  At step
five, based on the testimony of a vocational expert ("VE"), the ALJ concluded Plaintiff
could perform occupations existing in significant numbers in the national economy,
including table worker, document preparer, and telephone information clerk.  (R. 33-34.)
Thus, the ALJ found Plaintiff was not disabled.  (R. 34-35.)

## IV.   Issues

Plaintiff's brief ostensibly raises one issue of error—that the ALJ failed to consider

the combination of all of Plaintiff's severe and non-severe impairments and their limitations in forming the RFC. (ECF No. 8 at 3 (citing Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).)

However, in the body of his brief, Plaintiff raises additional purported errors—often with very little support. Where the Court can discern a distinct argument, it has been addressed below. Plaintiff's counsel is cautioned about the failure to comply with LCvR 5-1 and its associated procedures.[3] Blending several claimed errors into a single issue "is a dangerous practice, because we are not required to speculate on what a party is arguing or to craft her arguments for her." *Eacret v. Barnhart*, 120 F. App'x 264, 266 (10th Cir. 2005) (unpublished).[4]

## V.    Analysis

### A.    Consideration of All Plaintiff's Impairments and Limitations

The Court first addresses the only actual error raised on appeal—whether the ALJ considered the combined effect of all his impairments and their related limitations in accordance with SSR 96-8p. Plaintiff complains that the ALJ failed to provide the appropriate "narrative discussion" or link his RFC determination to specific evidence in the record. (ECF No. 8 at 3-4.)

As noted above, to proceed to steps four and five, the ALJ determines a claimant's RFC. The RFC is the claimant's "*maximum* remaining ability to do sustained work activities in an ordinary work setting" for 8 hours a day, 5 days per week, despite his medical impairments and symptoms. SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996).

---

[3] *See Administrative Procedures for Social Security Actions under 42 U.S.C. § 405(g),* https://www.oknd.uscourts.gov/administrative-procedures-actions-under-42-usc-405g (last visited Mar. 14, 2024).

[4] Unpublished decisions are not precedential, but they may be cited for their persuasive value. 10th Cir. R. 32.1(A).

In assessing the RFC, the ALJ "must include a narrative discussion describing how the evidence supports each conclusion" as to the claimant's work-related limitations. *Id.* at *7. In other words, the ALJ must explain the basis for the limitations included in the RFC, with citations to "specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* Additionally, the ALJ must "explain how any material inconsistencies or ambiguities in the evidence" of record were considered and resolved. *Id.*

Plaintiff makes no effort to show how the ALJ failed to provide this narrative discussion, nor does he point to any impairments the ALJ failed to consider. Instead, Plaintiff spends several pages outlining that the ALJ <u>did</u> consider all the evidence and explained how he evaluated that evidence. Plaintiff does not claim the ALJ failed to consider a medically determinable impairment; Plaintiff does not assert the ALJ actually overlooked any evidence (as opposed to weighing it differently); Plaintiff does not assert the ALJ overlooked any symptoms or potential limitations claimed by Plaintiff as resulting from his impairments (again, as opposed to finding those symptoms or purported limitations to be unsupported by the record). Here, the Court can "follow the adjudicator's reasoning," and no reversal is required. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012).

The Court's review may stop here, and counsel is cautioned that future opinions may stop after consideration of the "issue" raised on appeal, regardless of the myriad bits of law or argument sprinkled throughout the brief on other issues. However, the Court will consider below any other issues it was able to discern from Plaintiff's brief, in the order they were mentioned.

**B.     Consideration of Dr. Ghodasara's Examination**

Plaintiff appears to complain that the ALJ erred in considering the exam of Arjun Ghodasara, M.D., but finding it to have no probative value.   (ECF No. 8 at 6.) Dr. Ghodasara examined Plaintiff on February 3, 2017, over two years before the relevant period.  (R. 574-83.)  Plaintiff complains that the ALJ failed to discuss Dr. Ghodasara's description of Plaintiff's "gait as unstable with a limp favoring his right side and requiring a cane."  (ECF No. 8 at 6 (citing R. 578).)  It is unclear what this information adds. Plaintiff pulls the "requirement" of a cane from the physical exam section of Dr. Ghodasara's report.  (R. 578 ("Gait is unstable with normal speed. Limp is present and prefers to walk on right side. The claimant does require the use of cane to ambulate.").)  But, when Dr. Ghodasara provided his actual "Assessment," he simply noted, "Unstable gait with normal speed.  Limp present and favors walking on right leg. Uses cane."  (*Id.*)  In any event, the ALJ considered this report and cited other findings from it.  (R. 31.)  The ALJ gave the report "no probative value because it was provided pursuant to a prior application for disability benefits, was given during a period previously adjudicated, and was given prior to the alleged onset date for this case."  (*Id.*)

The Tenth Circuit has required an ALJ to consider a treating physician's records that pre-date the relevant period, as such "observations are nevertheless relevant to the claimant's medical history . . . ."  *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004).  However, the Tenth Circuit has found no authority "requiring an ALJ . . . to discuss the opinions of a consultative examiner from a prior disability proceeding—one that may have involved different medical issues and evidence, and that resulted in a denial of benefits."  *Arterberry v. Berryhill*, 743 F. App'x 227, 230 (10th Cir. 2018) (unpublished).  "The record must demonstrate that the ALJ considered all of the evidence," but he is "not required to discuss every piece of evidence." *Clifton v. Chater*,

79 F.3d 1007, 1009-10 (10th Cir. 1996).   Rather, the ALJ must discuss the evidence supporting his decision, the uncontroverted evidence he chooses not to rely on, and the significantly probative evidence he rejects.   *Id.* at 1010.   There is nothing "significantly probative" about Dr. Ghodasara's report, particularly given the ALJ's ample discussion of similar findings during the relevant period.   The ALJ stated he considered Dr. Ghodasara's report, and Plaintiff has given the Court no reason to doubt this statement. Plaintiff has shown no error.

### C.   Consideration of Dr. Parsons' Opinion

Plaintiff next complains that the ALJ found unpersuasive the opinion of Jordan Parsons, M.D.   (ECF No. 8 at 6.)   According to Plaintiff, Dr. Parsons opined that Plaintiff "would require a cane for extended periods of time as he can only walk a 'short distance' without one and his gait is slow."   (*Id.* (citing R. 648-49, 652).)   However, this is not all part of Dr. Parsons' opinion.   Instead, Dr. Parsons repeated Plaintiff's own statement "that he cannot walk, stand, or sit for any extended period" and that he "reports using a cane most of the time."   (R. 648.)   Then, on exam, Dr. Parsons noted:

> **Gait:** The claimant moves about the room with a normal gait which is stable with normal speed and stability.   No limp is present.   The claimant does not require the use of assistive devices to ambulate unless it is for long distances.   For extended periods he does require a cane.
>
> **Ambulation Aid:** The following limb necessitates the need for an ambulation aid:  None.   He doesn't have a cane today but reports needing one for doing any extended distance.   The limb is normal in appearance. Gait with assistive device is normal as to speed, safety, and stability.

(R. 649.)   When asked to comment on the medical necessity of a cane, Dr. Parsons stated, "Normally uses a cane but doesn't have one today.   He can walk short distances without it.   Gait is slow, but steady and stable."   (R. 652.)   As such, it does not appear that Dr. Parsons ever opined as to Plaintiff's need for a cane.   He simply repeated Plaintiff's own statement of his symptoms and then, when asked to comment on medical necessity, he

declined and only commented on what he observed (albeit, as the ALJ noted, in a way not supported by his exam results).

Nevertheless, the ALJ analyzed Dr. Parsons' statement as if it were an opinion and found it unpersuasive, because it was unsupported by the remainder of his report and inconsistent with other evidence.[5] (R. 31.) This was all that the regulations required. *See* 20 C.F.R. § 416.920c(b)(2) ("[W]e will explain how we considered the supportability and consistency factors for a medical source's medical opinions . . . in your determination or decision."); *see also id.* § 416.920c(c)(1) (defining supportability); *id.* § 416.920c(c)(2) (defining consistency).

Plaintiff contends the ALJ's conclusion regarding Dr. Parsons's opinion is not supported by substantial evidence, because other evidence <u>was</u> consistent with Dr. Parson's findings. (ECF No. 8 at 6-7 (citing a September 2019 physical examination of Dr. David Young; observations made by mental examiner, Dr. Jane Kurek in October 2019; and Dr. Ghodasara's 2017 report).) But, the ALJ considered all of this evidence and, as to Drs. Young and Kurek, even listed the exact findings Plaintiff asserts were probative. (R. 27-28.) Plaintiff is essentially asking the Court to reweigh the evidence in his favor, which the Court cannot do. *See Smith v. Colvin*, 821 F.3d 1264, 1266 (10th Cir. 2016) ("[I]n making [the substantial evidence] determination, we cannot reweigh the evidence or substitute our judgment for the administrative law judge's.").

---

[5] The ALJ found Dr. Parson's opinion was not supported by his own examination that showed no limb required the use of a cane and that Plaintiff's gait was steady and stable without a cane. (R. 31 (citing R. 649).) The ALJ further found Dr. Parsons's opinion inconsistent with Dr. William Cooper's examination note that Plaintiff "entered the exam room without hesitation and walked with a normal gait into the office." (*Id.* (quoting R. 644).)

### D.   Consideration of Plaintiff's Subjective Symptoms

Plaintiff next contends the ALJ failed to perform a proper consistency analysis under SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017), because the ALJ "did not explain how the specific facts of the case led him to his consistency determination." (ECF No. 8 at 7-8.)

### 1.   Standards for Evaluating Pain and Other Symptoms

Generally, when evaluating a claimant's subjective symptoms,[6] the ALJ uses a two-step process. SSR 16-3p, at *2; *see also* 20 C.F.R. § 416.929(b)-(c). First, the medical signs or laboratory findings must show the existence of medical impairment(s) that result from anatomical, physiological, or psychological abnormalities and could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 416.929(b). Second, once such impairment(s) are established, the ALJ must then evaluate the intensity and persistence of the symptoms, so he can determine how the symptoms limit the claimant's capacity to work. *Id.* § 416.929(c)(1).

Factors the ALJ should consider include: (i) the claimant's daily activities; (ii) the location, duration, frequency, and intensity of symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of medications; (v) treatment aside from medication; (vi) any other measures the claimant has used to relieve the symptoms; and (vii) other factors concerning functional limitations and restrictions due to the symptoms. *Id.* § 416.929(c)(3)(i)-(vii). The ALJ's symptom findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir.

---

[6] *See* 20 C.F.R. § 416.902(n) (defining "symptoms" as the claimant's "own description of [his] physical or mental impairment").

2008) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)).   However, a "formalistic factor-by-factor recitation of the evidence" is not required where the ALJ states "the specific evidence he relies on" in the evaluation.   *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

Because consistency findings are "peculiarly the province of the finder of fact," reviewing courts should "not upset such determinations when supported by substantial evidence."  *Cowan*, 552 F.3d at 1190 (quoting *Kepler*, 683 F.3d at 391).  That is not to say the ALJ may simply make a "single, conclusory statement" that the individual's symptoms have been considered or that the claimant's statements are/are not consistent.  SSR 16-3p, at *10.  Rather, the ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms."  *Id.*

### 2.    The ALJ's Analysis of Plaintiff's Symptoms

The ALJ summarized Plaintiff's administrative hearing testimony in his written decision.   (R. 26-27.)   Relevant to this appeal, the ALJ specifically acknowledged Plaintiff's testimony that he uses a cane for knots on his feet, can only walk for about five to ten minutes without a cane, tries not to go more than 50-75 feet without a cane, and uses a cane three to four times a day, including when walking around his apartment.  (*Id.*) The ALJ then determined that, although Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, his statements regarding the intensity, persistence, and limiting effect of his symptoms were not entirely consistent with the medical evidence and other evidence in the record.  (R. 27.)

Regarding Plaintiff's physical limitations, the ALJ stated this finding was "evident" based on Dr. Parsons's examination showing Plaintiff had a "normal range of motion in

his bilateral upper extremities, that his grip strength was equal bilaterally and rated at 5/5, that he had no sensory defects, and that he had a steady and stable gait without the use of a cane." (*Id.* (citing R. 649-52).)  However, the ALJ also pointed to other pieces of objective medical evidence, including: (i) Dr. Young's September 2019 examination showing Plaintiff had limited range of motion in his back and neck, positive straight leg raise bilaterally in the seated and supine positions, and toe and heel walking normal bilaterally (R. 27-28 (citing R. 616-20)); (ii) Dr. Cooper's September 2021 observation that Plaintiff walked in the room with a normal gait and without hesitation (R. 29 (citing R. 644)); and (iii) other findings from Dr. Parsons's examination, including that Plaintiff had a limited range of motion in his cervical and lumbar spine, negative straight leg raise in the seated and supine position, no pain noted with passive range of movement, and no muscle atrophy (R. 29-30 (citing R. 649-52)).  The ALJ then went on to conclude,

> The undersigned does not discount all of claimant's complaints.  In view of his impairments, he would undoubtedly have some difficulties.   The longitudinal record reflects, however, that the claimant's range of motion to his bilateral upper and lower extremities is within normal limits, that he has no focal or sensory deficits, that his toe and heel walking is normal, and this his gait is steady without a cane ([R. 616-20, 649-52]).  The longitudinal evidence demonstrates that the claimant does not have a limb that necessitates the need for an ambulation aid and there is no adequate description in the record of the circumstances for which it would be needed ([R. 616, 644, 649,]).

(R. 33.)

### 3.    The ALJ's Symptom Findings are Adequately Explained and Supported by Substantial Evidence

The Court finds no error in the ALJ's consistency analysis.  The ALJ provided numerous reasons for finding Plaintiff's physical limitations were not as severe or limiting as alleged, and a review of the record confirms these reasons are supported by substantial

evidence.  The ALJ's analysis reflects that he considered Plaintiff's daily activities (R. 27[7]); the location, duration, frequency, and intensity of Plaintiff's symptoms (*id.*[8]); precipitating and aggravating factors (*id.*[9]); the type, dosage, and effectiveness of treatment (R. 26-27[10]); the treatment aside from medication (R. 26[11]); the other measures used to relieve Plaintiff's symptoms (R. 27[12]); and other relevant factors concerning Plaintiff's limitations (R. 26-27[13]).  Only after reviewing Plaintiff's treatment history and subjective statements (R. 26-33), did the ALJ find Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the record evidence.  The Court finds the ALJ sufficiently linked his consistency findings to the evidence by providing clear and specific reasons for his determination. The ALJ's finding is consistent with and supported by a reasonable reading of the record. Thus, there is sufficient evidence for the Court to accept the ALJ's conclusion.

### E.    Plaintiff's Use of a Cane Under SSR 96-9p

Plaintiff next argues the ALJ erred in failing to include a limitation that Plaintiff

---

[7] Noting, e.g., that Plaintiff has trouble brushing his hair and shaving.  (R. 27.)

[8] Noting, e.g., that Plaintiff spends most of his days in pain.  (R. 27.)

[9] Noting, e.g., that Plaintiff spends his "good days" laying on the couch and spends his "bad days" laying in bed and that he has roughly three "bad days" a week, where he cannot leave the bed due to pain and anxiety.  (R. 27.)

[10] Noting, e.g., that Plaintiff smokes medical marijuana to help with stress, anxiety, and pain.  (R. 26-27.)

[11] Noting, e.g., that a doctor told Plaintiff he would have chronic back pain for the rest of his life unless he has surgery.  (R. 26.)

[12] Noting, e.g., that Plaintiff uses a cane three or four times a day to help with balance issues and walking long distances.  (R. 27.)

[13]  Noting, e.g., that Plaintiff does not have the strength to change a tire; tries not to carry more than a half-gallon of milk; constantly drops and breaks objects with his hands; has trouble with buttons and zippers; tries not to go 50-75 feet without a cane; and would not trust himself to swing a hammer.  (R. 26-27.)

needed a cane to ambulate.  (ECF No. 8 at 8.)  Under SSR 96-9p, "[t]o find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed."  1996 WL 374185, at *7 (July 2, 1996).  Multiple consultative examiners noted Plaintiff had an unstable gait, walked with a limp, and used a cane during examination.  (*See* R. 578, 616, 629.)  But, a doctor's observations that a claimant used a cane and had an abnormal gait does not establish the need for a cane under SSR 96-9p.  *See Jamie R. J. v. Saul*, No. 19-CV-82-JFJ, 2020 WL 1686254, at *1, *3 (N.D. Okla. Apr. 7, 2020) (finding medical record that showed plaintiff "demonstrated pain while walking" and was "markedly compromised in speed, safety, and stability" insufficient to establish the need for a cane under SSR-96-9p); *Smith v. Colvin*, No. 14-cv-413-TLW, 2016 WL 915255, at *4 (N.D. Okla. Mar. 7, 2016) ("[P]laintiff's testimony and the observations of his doctors that he used a cane do not establish that the cane is a medical necessity.").

Plaintiff argues the ALJ engaged in improper picking and choosing, because he "relied on a single exam finding that Claimant entered with room 'without hesitation' to find Claimant did not require a cane."  (ECF No. 8 at 8 (citing R. 31, 644).)  As noted above, the ALJ did not rely solely on this notation.  For instance, the ALJ also relied heavily on Dr. Parson's examination observations and findings that Plaintiff moved about the room with a steady and stable gait and that no limb "necessitate[d] the need" for an ambulation device.  (R. 31 (citing R. 649).)  Therefore, the Court finds Plaintiff's arguments unpersuasive and that substantial evidence supports the ALJ's finding that Plaintiff did not require a cane to ambulate.

**F.      Plaintiff's Limitation to Simple and Detailed Instructions**

Plaintiff next appears to argue that the ALJ erred in finding Plaintiff could "understand, remember and carry out simple instructions and detailed instructions" when he has an eighth-grade reading ability, slow mental activity, and limited education.[14] (ECF No. 8 at 8-9.)  But, the ALJ noted each of these facts.  (*See* R. 29 (noting Plaintiff's test scores "suggested eighth grade sight-reading ability' and "below average pace of mental activity"); R. 26 (noting Plaintiff "completed the eleventh grade and does not have a GED").)

Plaintiff similarly complains that this RFC ignores test results from Dr. Kurek's examination that he did not know the year, had an impaired MoCA score, did not perform a single serial seven, and did poorly on the verbal fluency test.  (ECF No. 8 at 10 (citing R. 629-31).)  Again, this was all noted in the ALJ's decision.  (R. 28 ("He provided the incorrect year. . . . The claimant was unable to accurately perform any serial 7 subtractions. . . . On the verbal fluency task, the claimant scored below the cutoff of eleven words within sixty seconds. . . . On the MoCA, the claimant's total score . . . was below the cutoff score . . . .").)

Plaintiff is, again, asking the Court to reweigh the evidence and reach a different conclusion than the ALJ.  This is not proper on appeal.

---

[14] Plaintiff does not argue there is an inconsistency between the VE's testimony (based on the RFC) and the Dictionary of Occupational Titles.  While two of the jobs identified by the VE, Document Preparer (DOT § 249.587-018) and Telephone Information Clerk (DOT § 237.367-046), have a reasoning level of 3, all three jobs identified by the VE and adopted by the ALJ are unskilled work and have a Specific Vocational Preparation ("SVP") of 2.  This is in line with Plaintiff's limited education.  *See* SSR 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000) ("[U]nskilled work corresponds to an SVP of 1-2."); 20 C.F.R. § 416.964(b)(3) ("Limited education means ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs.").

**G.     Plaintiff's Moderate Limitation in Concentrating, Persisting, or Maintaining Pace**

Next, Plaintiff argues the ALJ incorrectly ignored agency reviewer findings that he was moderately limited in concentration, persistence, and pace.  (ECF No. 8 at 10-11.) But, at step three, the ALJ also found "[w]ith regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation."  (R. 25.)  It is hard to see how the ALJ ignored these findings when he made them himself.

The ALJ further noted that, "[t]his level of limitation is further exemplified in the below discussion regarding the claimant's residual functional capacity."  (*Id.*)  This Court has previously rejected arguments that attempt to equate step-three findings with the separate task of determining work-related functional limitations in the RFC.  *See, e.g., Christopher S. S. v. Kijakazi*, No. 21-cv-00367-SH, 2023 WL 2186432, at *6-7 (N.D. Okla. Feb. 23, 2023).  "The ALJ's finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment."  *Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015).     Nevertheless, the Tenth Circuit has held that "moderate difficulty with concentration, persistence, and pace is encompassed by the limitation of work involving 'simple tasks with some detail.'"  *Orso v. Colvin*, 658 F. App'x 418, 420 (10th Cir. 2016) (unpublished).  Here, the ALJ similarly limited Plaintiff to "understand, remember and carryout simple instructions and detailed instructions" (R. 25) and found he could perform unskilled work with an SVP of 2 (R. 34).[15]  Plaintiff has shown no error.

---

[15] The agency reviewers similarly found Plaintiff was "able to understand and recall simple and detailed instructions."  (R. 192, 209; *see also* R. 192, 210 (finding Plaintiff could "perform simple and some complex tasks").)  And, while the reviewers noted Plaintiff "may have variable periods of lapses in attention and concentration," they also noted that "he is generally able to maintain adequate CP&P [concentration, persistence, and pace] sufficient for employment."  (R. 192, 210.)

### H.     Plaintiff's Seizure Disorder

Plaintiff next complains that the ALJ failed to adequately accommodate his seizure disorder through the physical and mental limitations imposed.  (ECF No. 8 at 11-13.)  This argument is primarily a rehash of Plaintiff's other arguments.  (*See id.* at 13 ("the ALJ failed to properly assess Claimant's medical opinions thus excluding symptoms and signs from both Claimant's physical and mental impairments, *supra*.").)  Moreover, Plaintiff concedes the ALJ considered and summarized most of the evidence surrounding his seizures.  (*Id.*)  In the written decision, the ALJ considered that Plaintiff's seizures occur two to three times per week and ten times a month; occur mostly at night; last 5-10 minutes; cause confusion and slurred speech; and can cause antisocial and unconventional behavior, convulsions, and loss of awareness.  (R. 28 (citing R. 621).)  Plaintiff points to nothing significantly probative that the ALJ rejected or ignored.  *Clifton*, 79 F.3d at 1010.  The Court finds that Plaintiff is, once again, asking the Court reweigh evidence in his favor, which the Court cannot do.  *See Smith*, 821 F.3d at 1266.

## VI.     Conclusion

For the foregoing reasons, the Commissioner's decision finding Plaintiff not disabled is **AFFIRMED**.

**SO ORDERED** this 25th day of March, 2024.

SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT